# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Cole Alexander Gaither and<br>Anita McCaslin Gaither,<br><br>Debtors. | C/A No. 18-01317-dd<br><br>Adv. Pro. No. 18-80040-dd |
| Michelle L. Vieira, Chapter 7 Trustee<br>for Cole Alexander Gaither and Anita<br>McCaslin Gaither,<br><br>Plaintiff,<br><br>v.<br><br>Zachary A. Gaither; Jordan Gaither<br>Willis; Benjamin Richard Gaither; and<br>ZJB, LLC,<br><br>Defendants. | Chapter 7<br><br>**ORDER** |

This matter is before the Court on the defendants', Zachary A. Gaither, Jordan Gaither Willis, Benjamin Richard Gaither, and ZJB, LLC (collectively "Defendants"), Motion to Dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.[1] [Docket No. 9].

## <u>BACKGROUND</u>

This adversary proceeding arises from a tragic accident and a subsequent civil action which resulted in a $1.3 million settlement in favor of Cole and Anita Gaither ("Debtors").

1.    On August 14, 2014, Debtors' son, Matthew Gaither, died in an aviation accident.

---

[1] These rules are made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

2.      On January 8, 2015, the Charleston County Probate Court named Debtors the personal representatives of Matthew's estate.

3.      On January 26, 2015, Debtors filed a lawsuit against Coastal Aviation, Inc. and William Peterson for the damages resulting from Matthew's death.

4.      On May 6, 2015, the Charleston County Court of Common Pleas approved a settlement of $1.3 million in favor of Debtors.   The net recovery of the settlement totaled $830,183.67 ("Settlement Proceeds").

5.      On the same day, Debtors disclaimed their rights to the Settlement Proceeds.  As a result, the Settlement Proceeds passed to Debtors' three surviving children, and each child received $276,727.89—a one-third interest.

6.      The surviving children subsequently formed ZJB, LLC (the "LLC") and deposited the Settlement Proceeds in an account owned by the LLC.

7.      Debtors filed their chapter 7 bankruptcy case on March 16, 2018.

8.      In an amended proof of claim, the Department of the Treasury – Internal Revenue Service ("IRS") claimed Debtors owed the federal government a total of $787,239.85.[2]  Of the total amount, the IRS listed $332,023.52 as the total amount of secured claims and $455,216.33 as the total amount of unsecured claims.  Of the total amount of unsecured claims, the IRS listed $102,873.82 as unsecured priority claims and $352,342.51 as unsecured general claims.[3]

---

[2] In its original proof of claim, the IRS claimed Debtors owed the federal government a total of $799,061.60.  Of this total amount, the IRS listed $332,023.52 as secured and $467,038.08 as unsecured.
[3] No party objected to the proof of claim.  Thus, the IRS's claim is allowed pursuant to § 502(a).

9.      On June 4, 2018, the plaintiff and chapter 7 trustee, Michelle L. Vieira ("Trustee"),
filed this adversary proceeding, asserting that 11 U.S.C. § 544(b) permits Trustee to avoid Debtors'
transfer of the disclaimed Settlement Proceeds to Defendants.[4]  [Docket No. 1].

10.      On July 18, 2018, Defendants filed their Motion to Dismiss, asserting that Trustee
may not avoid Debtors' transfer of the Settlement Proceeds.  [Docket No. 9].

11.      On August 17, 2018, Trustee filed an objection to Defendants' Motion.  [Docket
No. 12].

12.      On September 4, 2018, Defendants filed a response to Trustee's objection.[5]
[Docket No. 14].

13.      The Court held a hearing on Defendants' Motion on October 23, 2018 and allowed
Trustee to file a supplemental response to Defendants' Reply.  Additionally, the Court permitted
Defendants to file a final supplemental reply and Trustee to respond to Defendants' final
supplemental reply.

14.      On November 2, 2018, Trustee filed a supplemental response to Defendants' Reply.
[Docket No. 19].

15.      On November 9, 2018, Defendants filed a final response to Trustee's Supplemental
Response.  [Docket No. 20].

16.      On the same day, Trustee filed a final supplemental reply to Defendants' Final
Supplemental Response.  [Docket No. 21].

## **LEGAL STANDARD**

---

[4] Trustee alleges the following specific causes of action: avoidance of fraudulent transfer, recovery of avoided transfer, and accounting and turnover.  [Docket No. 1].
[5] On September 5, 2018, Defendants supplemented their response with another document titled, "Response to Response."  [Docket No. 15].

3

Defendants filed their Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, which are made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.  Dismissal is appropriate under Rule 12(b)(1) where the court lacks subject-matter jurisdiction.  A party bringing a motion to dismiss under Rule 12(b)(1) contends that the complaint fails to state facts upon which jurisdiction can be founded. When a defendant brings a Rule 12(b)(1) motion, the burden is on the plaintiff to prove jurisdiction, and the court must regard the allegations in the pleadings as "mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Fed R. Bankr. P. 7008. Moreover, the statement must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 556).

**<u>DISCUSSION</u>**

4

In her adversary complaint, Trustee contends that § 544(b) permits her to step into the shoes of the IRS and employ the Federal Debt Collection Procedures Act[6] ("FDCPA") to avoid the transfer of the disclaimed Settlement Proceeds to Defendants.  Under 11 U.S.C. § 544(b),

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under *applicable law* by a *creditor holding an unsecured claim* that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1) (emphasis added).

In an action under the FDCPA, "the United States . . . may obtain avoidance of the transfer or obligation to the extent necessary to satisfy the debt to the United States."  28 U.S.C. § 3306(a)(1).  Such an action may be brought where a debtor fraudulently transfers funds.  28 U.S.C. § 3304.  A fraudulent transfer occurs when a debtor transfers funds with the "actual intent to hinder, delay, or defraud a creditor" or where "the debtor makes the transfer . . . without receiving reasonably equivalent value in exchange."  *Id.*

In their Motion to Dismiss, Defendants contend that the IRS is not an allowable "creditor holding an unsecured claim," for purposes of § 544(b).  More specifically, Defendants argue that "Trustee is not authorized to bring claims which may only be asserted by the IRS," and thus "Trustee lacks standing."  [Docket No. 9].  Additionally, Defendants argue that, even if § 544(b) permits a trustee to step into the shoes of the IRS, the FDCPA is not "applicable law" for purposes of § 544(b).

Therefore, issues before the Court are (1) whether Trustee may step into the shoes of the IRS under § 544(b) and utilize federal law and (2) whether the FDCPA is "applicable law" for purposes of § 544(b).

## A)  Section 544(b) permits Trustee to step into the shoes of the IRS.

---

[6] 28 U.S.C. §§ 3001–3308.

Since 1931, when the Supreme Court decided *Moore v. Bay*, 284 U.S. 4 (1931), courts have almost universally held that trustees may step into the shoes of actual unsecured creditors, exercise the powers available to those creditors, and entirely avoid a transfer for the benefit of all the creditors in the bankruptcy estate. This is so even under state fraudulent transfer recovery schemes that benefit only a particular creditor. Thus, the 28 U.S.C. § 3306(a)(1) limitation on recovery—"to the extent necessary to satisfy the debt to the United States"—is not a limitation under § 544(b).

The first issue this Court must decide is whether the IRS holds an allowable unsecured claim for purposes of § 544(b) such that Trustee may step into the shoes of the IRS and employ the collection powers available to it. Under § 544(b)(1), a trustee "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by *a creditor holding an unsecured claim*." 11 U.S.C. § 544(b)(1) (emphasis added). The rights of the trustee are "dependent on the rights of actual creditors possessing claims that are allowable in bankruptcy." *Campbell v. Deans (In re J.R. Deans Co.)*, 249 B.R. 121, 129 (Bankr. D.S.C. 2000).

Where a trustee asserts the rights of any one creditor, the trustee does so not only for the benefit of that single creditor, but for the benefit of all the creditors. *See* Charles Tabb, Law of Bankruptcy 484 (4th ed. 2016) (citing *Moore v. Bay*, 284 U.S. at 4). Put another way, "the extent of the trustee's avoidance will not be limited to the amount the creditor could have avoided; instead, the entire transfer will be avoided." *Id.*

In the present matter, Debtors transferred the Settlement Proceeds by means of a disclaimer. Under South Carolina law, a disclaimer has the effect of avoiding a transfer such that the interest disclaimed "is considered never to have been transferred to the disclaimant." S.C. Code Ann. § 62-2-801(d)(1). However, in *Drye v. United States*, 528 U.S. 49, 59 (1999), the

United States Supreme Court held that a disclaimer does not defeat a federal tax lien; thus, if Trustee is permitted to step into the shoes of the IRS under § 544(b), Trustee may utilize any law the IRS might use to avoid the transfer of the Settlement Proceeds.

Defendants argue that the IRS is not an allowed unsecured creditor because Trustee is not permitted to assert claims on behalf of the IRS or the federal government, and thus § 544 does not permit Trustee to step into the shoes of the IRS.[7] Defendants rely heavily on the Fourth Circuit's reasoning in *Schlossberg v. Barney*, 380 F.3d 174 (4th Cir. 2004). In that case, the issue before the court was "whether § 544(a)(2) vests a trustee with the rights and powers of the IRS as a hypothetical creditor to penetrate the entireties exemption for the benefit of the individual creditors of the debtor." *Id.* at 177. The Fourth Circuit Court of Appeals held that the IRS did not constitute a "creditor that extends credit" as required by § 544(a)(2), and thus a trustee could not assert the collection powers of the IRS to reach the debtor's property. *Id.* at 181.

However, § 544(b) was not at issue in *Barney* as it is here. Rather, the trustee in *Barney* attempted to avoid a transfer under § 544(a). Sections 544(a) and 544(b) are different and should be analyzed separately. *See* Tabb, *supra*, at 482 (4th ed. 2016) ("Section 544(b)(1) differs from the strong arm power of § 544(a) in several critical respects."). While § 544(a) limits recovery to instances in which the trustee steps into the shoes of a "creditor that extends credit," § 544(b) extends to any "creditor holding an unsecured claim." Therefore, Defendants' reliance on *Barney* is unfounded because this matter requires the application of § 544(b) and not § 544(a).

In addition to *Barney*, Defendants rely heavily on *Wagner v. Ultima Holmes, Inc. (In re Vaughan Co.)*, 498 B.R. 297 (Bankr. D. N.M. 2013) in support of their argument. In *Vaughan*, the specific issue before the court was whether a trustee could step into the shoes of the IRS under

---

[7] To be clear, Trustee is not asserting causes of action for the sole benefit of the IRS. Rather, Trustee seeks to utilize the IRS's rights to the benefit of all creditors.

§ 544(b) to avail herself of the ten-year statute of limitations under 26 U.S.C. § 6502[8] and thus

avoid a fraudulent transfer that would otherwise be barred by New Mexico's four-year statute of

limitations.  *See Vaughan*, 498 B.R. at 302–03.

The court in *Vaughan* relied heavily on congressional intent and policy considerations to

determine that a bankruptcy trustee was not permitted to step into the shoes of the IRS and employ

federal collection powers, stating that § 544(b) did not license the trustee to be "immunized from

state statutes of limitation" by "standing in the shoes of the IRS."  *Id.* at 303–05.

The court expounded:

> The Court does not believe that Congress, by enacting Section 544(b), intended to
> vest sovereign powers in a bankruptcy trustee and thereby immunize her from the
> strictures of state law in the pursuit of her private interests.  If the federal
> government were to delegate the exercise of its sovereign powers in such
> circumstances, it would pervert the purpose of *nullum tempus*, which is to
> immunize the federal government from certain state laws.

*Id.* at 304–05.  Therefore, the court held that Congress uniquely granted immunity from state

statutes of limitation to the United States, and a trustee should not be permitted to utilize the ten-

year statute of limitations available to the IRS.  *Id.*

Furthermore, the court in *Vaughan* held that, even if the trustee were permitted to step into

the shoes of the IRS, the trustee would not be immune from the state's statute of limitations if the

action "involve[d] no public rights or interests."  *Id.* at 305.  The court reasoned that the federal

government should not function as a "mere conduit for the enforcement of private rights which

---

[8] Under, 26 U.S.C. § 6502 there is a ten-year statute of limitation period for the IRS to collect an unpaid tax.  The
statute provides, in part:

> Where the assessment of any tax imposed by this title has been made within the period of limitation
> properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only
> if the levy is made or the proceeding begun—
> (1) within 10 years after the assessment of the tax.

26 U.S.C. § 6502(a)(1).

could have been enforced by the private parties themselves." *Id.* at 304 (quoting *Marshall v. Intermountain Elec. Co., Inc.*, 614 F.2d 260, 263 n.3 (10th Cir. 1980)).  Under the court's reasoning, "[t]he IRS holds an unsecured claim in a substantial portion of bankruptcy cases," and thus, "[i]f a bankruptcy trustee or debtor in possession could recover transfers made within ten years before the petition date, it would eviscerate the UFTA's four-year look back period in most bankruptcy cases." *Id.* at 305.  Therefore, the court was "unwilling to draw an inference that Congress intended such a dramatic change in the law." *Id.* at 306.

The majority of courts, however, have addressed the same issue and concluded that § 544(b) does permit a trustee to step into the shoes of the IRS and avail herself of federal law.  *See, e.g.*, *Mukamal v. Citibank (In re Kipnis)*, 555 F.R. 877, 883 (Bankr. S.D. Fla. 2016) ("[T]he language in § 544(b) is clear and allows the Trustee . . . to step into the shoes of the IRS to take advantage of the ten-year collection period in 26 U.S.C. § 6502."); *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 711 (Bankr. N.D. Ill. 2014) (same); *Alberts v. HCA Inc. (In re Greater Se. Cmty. Hosp. Corp. I)*, 365 B.R. 293, 306 (Bankr. D.D.C. 2006) ("[T]he court concludes that [the trustee] can utilize the extended statute of limitations available to unsecured governmental creditors assuming that such creditors existed as of the petition date."); *Shearer v. Tepsic (In re Emergency Monitoring Technologies, Inc.)*, 347 B.R. 17, 19 (Bankr. W.D. Pa. 2006) (holding that the trustee could step into the shoes of the IRS and utilize the ten-year statute of limitations to avoid a transfer that was otherwise barred by the Pennsylvania statute of limitations); *Osherow v. Porras (In re Porras)*, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004) (holding that the trustee may "use the statutes of limitations available to any creditor," including the IRS).  Unlike the court in *Vaughan*, these courts focused on the plain language contained in § 544(b) rather than policy or congressional intent.

For example, in *Kipnis*, the Bankruptcy Court for the Southern District of Florida held that "the language in § 544(b) is clear" and allows a trustee "to step into the shoes of the IRS to take advantage of the ten-year collection period in 26 U.S.C. § 6502." *Kipnis*, 555 B.R. at 883. The court in *Kipnis* relied entirely on the plain meaning of § 544(b) in making its determination, and it explicitly adopted the reasoning of the Bankruptcy Court for the Northern District of Illinois' opinion in *Kaiser*. *Id.*

In *Kaiser*, the debtor began transferring various assets to multiple relatives through trusts sometime in the early 2000s. In October 2011, the debtor filed a chapter 7 petition with liabilities totaling over $18 million. *Kaiser*, 525 B.R. at 702. Thereafter, the IRS filed a claim for $5,000 in unpaid taxes. *Id.* at 703. The trustee in *Kaiser*, like the trustee in *Kipnis*, argued that § 544(b) and § 6502 allow a trustee to step into the shoes of the IRS to avoid transfers that would otherwise be time-barred by Illinois' four-year statute of limitations on fraudulent transfers. *Id.* at 702–04.

The court focused on the plain meaning of § 544(b) and determined that the statute allows a trustee to step into the shoes of the IRS to utilize the ten-year collection period afforded to the IRS under § 6502. *Id.* at 711. Additionally, the court addressed the *Vaughan* court's reasoning regarding congressional intent and policy considerations. *See id.* at 713. The court in *Kaiser* explicitly disagreed with the *Vaughan* court's focus on congressional intent, stating that such a consideration is "misplaced" in this particular context and "has no basis in the plain language of Section 544(b)." *Id.* The court noted that a § 544(b) action is derivative such that the trustee steps into the shoes of the creditor to enforce the rights of that creditor for the benefit of the entire bankruptcy estate. *Id.* Thus, "while 'the unsecured creditor's ability to trump the applicable state statute of limitations might derive from its sovereign immunity, the estate representative's ability to override that same limitation derives from § 544(b).'" *Id.* (quoting *In re Greater Se. Cmty.*

10

*Hosp. Corp. I*, 365 B.R. at 304). The court stated that "the focus . . . in determining who is acting

in a 'governmental capacity' is the unsecured creditor, not the estate representative." *Id.*

Moreover, the court in *Kaiser* refused to focus on public policy concerns, stating that

"policy concerns fly in the face of the plain language of § 544." *Id.* at 711. The court stated,

"[w]hen the law is clear, [it] need not look to the underlying policy." *Id.* at 713 (citing *United*

*States v. Ron Pair Enters.*, 489 U.S. 235, 240–41 (1989)). Under the court's reasoning, § 544(b)

permits a trustee to assert the rights of any creditor he or she chooses, and the trustee is subject to

the advantages and disadvantages that come with selecting a particular unsecured creditor. *Id.*

Thus, a court should not force a trustee "to do anything other than choose the optimal creditor."

*Id.* "To hold otherwise would be to set policy contrary to law; to force the trustee to do something

other than what the plain language of the statute provides." *Id.*

Ultimately, the court in *Kaiser* refused to consider legislative history or to "place policy

concerns above the plain language of the statute," stating that "[t]he language of § 544 is clear and

without limitation other than that expressly set forth therein." *Id.* at 711–12. Thus, the court held

that § 544(b) permitted the trustee to stand in the shoes of the IRS and utilize the ten-year look

back period.

In the present matter, the determination of the issue is essentially a task of statutory

construction. The Supreme Court of the United States has held that "[t]he task of resolving [a]

dispute over the meaning of [a statute] begins where all such inquiries must begin: with the

language of the statute itself." *United States v. Ron Pair Enters, Inc.*, 489 U.S. 235, 241 (1989).

Therefore, based on the plain language of § 544(b), this Court finds that since the IRS holds an

allowed unsecured claim, Trustee may step into the shoes of the IRS and utilize the collection

powers available to the IRS.

11

### B)  The FDCPA is "applicable law" for purposes of § 544(b).

Having established that a trustee may step into the shoes of the IRS and employ the collection powers available to it, the next issue before the Court is whether the FDCPA constitutes "applicable law" for purposes of § 544(b).  Trustee asserts that, if she is permitted to step into the shoes of the IRS and employ the collection powers available to it, she may utilize the provisions of the FDCPA to avoid Debtors' transfer of the disclaimed Settlement Proceeds to Defendants.

Defendants, however, argue that Trustee may not utilize the FDCPA to avoid the transfer because the FDCPA does not apply to the IRS, and thus it is not "applicable law" for purposes of § 544(b).  [Docket No. 14].  Defendants rely on two assertions in support of this argument: (1) the FDCPA does not apply to the IRS because the IRS must abide by the Internal Revenue Code, and (2) only the federal government may utilize the FDCPA, and thus a trustee standing in the shoes of the IRS may not.

### 1)  The FDCPA Applies to the IRS.

Defendants argue that the FDCPA does not apply to the IRS because the IRS must abide by the provisions of the Internal Revenue Code in collecting debts.  Specifically, Defendants argue that § 6901 of the Internal Revenue Code sets forth the procedures the IRS must follow to collect unpaid taxes owed by a transferor of assets, and thus the FDCPA does not apply.  Defendants cite to a list of authorities in support of their assertion that the FDCPA does not apply to the IRS;[9] however, the cases Defendants referenced in their briefs are not analogous to the present case and do not support Defendants' argument.

---

[9] *United States v. Shearer*, 122 A.F.T.R. 2d 2018-5400 (E.D. C.A. Aug. 7, 2018); *McLean v. McLean*, 119 A.F.T.R. 2d 2017-914 (D. Mont. 2017); *United States v. Harvey*, 112 A.F.T.R. 2d 2013-6473 (D.S.D. 2013); *United States v. Arthur*, 108 A.F.T.R. 2d 2011-6313 (E.D. Mo. 2011); *McKean v. United States*, 563 F. Supp. 2d 182 (D.D.C. 2008); *Sequoia Prop. and Equip., Ltd. P'ship v. U.S.*, 100 F. App'x 638, 640 (9th Cir. 2004); *United States v. Letscher*, 83 F. Supp. 2d 367 (S.D.N.Y. 1999); *United States v. Bantau*, 907 F. Supp. 988 (N.D. Tex. 1995); *United States v. Werner*, 857 F. Supp. 286 (S.D.N.Y. 1994); *United States v. Carney*, 796 F. Supp. 700 (E.D.N.Y. 1992).

For example, in *McKean v. United States*, 563 F. Supp. 2d 182, 187 (D.D.C. 2008), the United States District Court for the District of Columbia held that the Tax Code governed the procedure for the seizure of real property. Although the court stated that "[t]he Tax Code provides [the] exclusive procedures to govern the government's collection of unpaid tax liabilities," the statement should not be read in isolation. *See id.* In the sentence immediately prior, the court quoted 28 U.S.C. § 3001(b), stating that "[t]o the extent that another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with this chapter." *Id.* As the court noted, Title 26 governs the collection of taxes where the Tax Code applies, and 26 U.S.C. § 6331 specifically governs the issue in *McKean*: the seizure of real property. *See* 26 U.S.C. § 6331(b). The transfer of real property is not at issue in the present matter. Therefore, *McKean* is neither adverse nor equivalent to the present matter.

Similarly, the court in *Sequoia Prop. and Equip., Ltd. P'ship v. U.S.*, 100 F. App'x 638 (9th Cir. 2004) held that the federal government is not limited by the statute of limitations contained in the FDCPA. *Sequoia*, 100 F. App'x at 640. The court expounded:

> The government's fraudulent conveyance claim against Hyper-Jean and Sequoia is not barred by the statute of limitations contained in the Federal Debt Collections Procedures Act . . . *The FDCPA is not the exclusive means of collecting a debt.* Indeed, the FDCPA specifically contemplates debt collection through the Internal Revenue Code. . . . Similarly, the federal government has a number of mechanisms at its disposal by which it can foreclose against property that has been fraudulently conveyed to avoid tax collection.

*Id.* (emphasis added). *Sequoia* stands for the proposition that the IRS may not only employ the FDCPA to collect taxes, but it can employ other law to accomplish the same goal. Thus, this case actually supports Trustee's argument.

13

Other cases Defendants cite in support of their argument are similar to *McKean* and *Sequoia* in that the cases support the proposition that the IRS may employ either the FDCPA or the Internal Revenue Code. *See, e.g.*, *United States v. Shearer*, 122 A.F.T.R. 2d 2018-5400 (E.D. C.A. Aug. 7, 2018) (holding that the United States is not limited to the statute of limitations in state law or the FDCPA but may instead utilize the ten-year limitation period in the Tax Code); *McLean v. McLean*, 119 A.F.T.R. 2d 2017-914 (D. Mont. 2017) (same); *United States v. Arthur*, 108 A.F.T.R. 2d 2011-6313 (E.D. Mo. 2011) (same). Therefore, the authorities Defendants listed are not cases involving bankruptcy issues; they do not support Defendants' arguments; and they are dissimilar to the present case.

Additionally, the Internal Revenue Service's Internal Revenue Manual ("IRM") directly contradicts Defendants' assertion that the IRS may not employ the provisions of the FDCPA to collect a tax debt. At Part 5, Chapter 17, Section 14 of the IRM, it lists the collection powers available to the IRS in the context of fraudulent transfers. *See* IRM § 5.17.14. The IRM provides the following:

> 1.      The Federal Debt Collection Procedures Act (FDCPA) became effective in 1991. 28 USC § 3001 *et seq.* Prior to the FDCPA, the United States relied on applicable creditor and debtor law of the various states to attack fraudulent transfers.
>> a.      The FDCPA gives the United States a uniform federal procedure for setting aside a fraudulent transfer to aid in the collection of federal debts, *including tax debts*. 28 USC § 3301 *et seq.* These sections of the FDCPA are based on the Uniform Fraudulent Transfers Act, 7A Pt. II Uniform Laws Annotated (ULA) 2.
>> b.      The United States is not bound to use the FDCPA to collect its debts. If necessary, it can proceed under any cause of action provided by state or federal law. *See United States v. Letscher*, 99-2 USTC ¶ 50,947 (S.D.N.Y. 1999).

*Id.* (emphasis added).[10]

---

[10] This specific portion of the IRM is available at https://www.irs.gov/irm/part5/irm_05-017-014 (last visited Nov. 29, 2018, 2:30 PM).

14

Contrary to Defendants' assertion, the IRM supports the fact that the IRS may employ whatever laws available, whether state or federal, to collect its debts. Thus, when the IRS seeks to avoid a fraudulent transfer, it is not limited to the procedures set forth in § 6901 of the Internal Revenue Code. *See id.*; *Hillen v. City of Many Trees, LLC (In re CVAH, Inc.)*, 570 B.R. 816, 831 (Bankr. D. Idaho 2017) ("IRC § 6901 is not the only means available to IRS to recover transfers made by a taxpayer to another."); *United States v. Motosko*, No. 8:12-cv-338-T-35-TGW, 2012 WL 2088739, at *2 (M.D. Fla. Apr. 19, 2012) ("Several district courts have recognized that the collection procedures contemplated by 26 U.S.C. § 6901 [are] not the exclusive or mandatory remedy for the Government in seeking to collect taxes from a transferee.").

Therefore, the FDCPA applies to the IRS, and Defendants' argument is unfounded.

## 2)  Trustee May Invoke the FDCPA.

There is a split among the courts that have decided whether the FDCPA constitutes "applicable law" under § 544(b). Some courts have held that the FDCPA is not "applicable law." *See, e.g.*, *MC Asset Recovery, LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530, 536 (5th Cir. 2012) ("Both the statutory language and the legislative history of the FDCPA indicate that it is not applicable law under § 544(b)."); *MC Asset Recovery, LLC v. Southern Co.*, 2008 WL 8832805 (N.D. Ga. 2008) ("[T]he FDCPA cannot be the 'applicable law' within the meaning of Section 544(b) of the Bankruptcy Code.").

In *In re Mirant*, the Fifth Circuit held that the FDCPA did not constitute "applicable law" for purposes of § 544(b). 675 F.3d at 536. The court focused on the language of § 3003(c), which provides that the FDCPA "shall not be construed to supersede or modify" the Bankruptcy Code. *Id.* (citing 28 U.S.C. § 3003(c)). The court noted that "the legislative history was not dispositive," but it found support for its position in the statement of a committee chairman who had been "the

author of the final version of the [FDCPA]." *Id.* at 535.  Specifically, the court relied upon the following quote of the chairman: "[the FDCPA] was carefully worded to make clear that the act would have absolutely no effect on the Bankruptcy Code." *Id.* (quoting 136 Cong. Rec. H13288 (daily ed. Oct. 27, 1990) (statement of Rep. Jack Brooks)).  Ultimately, the court in *In re Mirant* concluded that "treating the FDCPA as applicable law under § 544(b) would impermissibly modify the operation of Title 11" and violate § 3003(c); therefore, "§ 3003(c) does not permit the FDCPA to be used as applicable law under § 544(b)." *Id.* at 535.

However, the majority of courts presented with the same issue have held that the FDCPA is "applicable law" for purposes of § 544(b).  *See, e.g.*, *In re CVAH*, 570 B.R. at 823 ("[T]he operation of § 544(b)(1) in tandem with the FDCPA is clear: because [the] IRS, as a federal creditor, could sue the defendants under the FDCPA to avoid the target transfers, Trustee may also do so."); *Gordon v. Harrison (In re Alpha Protective Servs., Inc.)*, 531 B.R. 889, 906 (Bankr. M.D. Ga. 2015) ("[T]he FDCPA is 'applicable law' for the purposes of § 544."); *In re Tronox*, 503 B.R. 239 (Bankr. S.D.N.Y. 2013) (holding that the FDCPA is applicable law under § 544(b)); *see also In re Kaiser*, 525 B.R. at 711 (holding that a trustee may step into the shoes of any unsecured creditor, including the IRS, and utilize a longer look-back period); *In re Kipnis*, 555 F.R. at 883 (same).

In *In re Tronox*, the United States Bankruptcy Court for the Southern District of New York held that the FDCPA is "applicable law" for purposes of § 544(b).  503 B.R. at 273.  The court specifically addressed *In re Mirant*, stating that "the Fifth Circuit in *Mirant* rejected a line of cases that have held that the FDCPA can be 'applicable law' for purposes of § 544(b)." *Id.*  The court departed from the reasoning in *In re Mirant* and held that "[t]reating the FDCPA as 'applicable

law' does not 'modify' or 'supercede' the operation of the Bankruptcy Code," concluding that the court in *In re Mirant* gave "too much weight to a comment in the legislative history." *Id.*

Likewise, in an unpublished opinion, the United States Bankruptcy Court for the District of South Carolina permitted a trustee to stand in the shoes of the IRS and assert a claim under the FDCPA. *Anderson v. Architectural Glass Constr., Inc. (In re Pfister)*, No. 09-05670-HB, 2012 WL 1144540, at *5 (Bankr. D.S.C. Apr. 4, 2012), *aff'd*, 749 F.3d 294 (4th Cir. 2014) ("Because Debtor was indebted to the IRS at the time of the Transfer, the Court finds that the Transfer is also constructively fraudulent and avoidable pursuant to § 544(b) and 28 U.S.C. § 3304(a)(1)").

Like the courts that have held that the plain language in § 544(b) does not preclude the IRS as a qualifying unsecured creditor, the majority of courts have focused on the plain language of § 544(b) in holding that the FDCPA is "applicable law." *See, e.g.*, *In re CVAH*, 570 B.R. at 825 ("[U]nder the plain language of § 544(b)(1), Trustee may step into the shoes of IRS and, accordingly, may invoke any "applicable law" that IRS could use outside of bankruptcy to avoid the targeted transfers to the defendants."); *In re Kipnis*, 555 F.R. at 883 ("The fundamental problem with *Vaughan's* analysis is its failure to start where courts must start in interpreting statutes and that is to look at the statute's plain meaning."); *In re Alpha*, 531 B.R. at 906 ("The ordinary meaning of 'applicable law' in § 544 would be any law that could be used by an unsecured creditor to avoid a transfer outside bankruptcy."); *In re Kaiser*, 525 B.R. at 712 ("The court . . . declines to place policy concerns above the plain language of the statute.").

In *In re CVAH*, the Bankruptcy Court for the District of Idaho held that the FDCPA constitutes "applicable law" and that "applicable law, as used in § 544(b)(1), should be construed to be a broad term, as the code contains no language limiting its meaning." *In re CVAH*, 570 B.R. at 825 (internal quotation marks omitted). In that case, the trustee sought to "step into the shoes

of the creditor IRS" and utilize the longer look back periods in the FDCPA under 28 U.S.C. § 3306

and the IRS under 26 U.S.C. § 6502 to avoid any transfers the debtor made within six years prior

to filing its bankruptcy petition. *Id.* at 822. The defendants in that case argued that the trustee

could not invoke the extended look-back periods of either the FDCPA or the Tax Code to avoid

transfers under § 544(b)(1). *Id.* The court disagreed, stating that, "under the plain language of §

544(b)(1)," a trustee is permitted to "step into the shoes of the IRS and, accordingly, may invoke

any 'applicable law' that [the] IRS could use outside of bankruptcy to avoid the targeted transfers

to the defendants." *Id.* at 825. Moreover, the court held that, "but for the [defendant's] bankruptcy,

IRS could have utilized *both the FDCPA and the IRC* as a legal basis to avoid the . . . transfers."

*Id.* (emphasis added).

Similarly, in *In re Alpha*, the issue before the court was analogous to the issue in the present

matter: "whether a trustee in bankruptcy can step into the shoes of a federal creditor and use the

FDCPA as 'applicable law' under Section 544(b)(1)." 531 B.R. at 905. The court held that "the

FDCPA is 'applicable law' for purposes of § 544." *Id.* at 906. The court explained:

> The ordinary meaning of "applicable law" in § 544 would be any law that could be
> used by an unsecured creditor to avoid a transfer outside bankruptcy. The clear
> language of § 544 does not place a limit on which unsecured creditor the trustee may
> choose, so long as the chosen creditor holds a claim that is allowable under §
> 502. Therefore, § 544 allows a trustee to step into the shoes of a governmental
> creditor.

*Id.*

The United States Supreme Court has examined the meaning of the similar phrase,

"applicable nonbankruptcy law," in another section of the Bankruptcy Code, § 541, and

determined that it should be interpreted broadly. *See Patterson v. Shumate*, 504 U.S. 753 (1992).

Specifically, the Court analyzed § 541(c)(2) to determine "whether an anti-alienation provision

contained in an ERISA-qualified pension plan constitutes a restriction on transfer enforceable

under 'applicable nonbankruptcy law,' and whether, accordingly, a debtor may exclude his interest

in such a plan from the property of the bankruptcy estate." 504 U.S. at 755. Under § 541(c)(2),

the debtor's interest in the plan could be excluded from the estate if he held a beneficial interest in

a trust that had an anti-alienation provision enforceable under "applicable nonbankruptcy law."

The Court read "applicable nonbankruptcy law" broadly, holding that § 541(c)(2) encompassed

any relevant nonbankruptcy law, including ERISA. *Id.* at 759. The Court refused to consider the

legislative history in depth, stating that the "clarity of the language" in § 541(c)(2) "obviate[d] the

need" to inquire into the legislative history of the statute. *Id.* at 761. Furthermore, the Court noted

that those courts which have interpreted "applicable nonbankruptcy law" narrowly and "limited

[it] to state spendthrift trust law by ignoring the plain language of § 541(c)(2) and relying on

isolated excerpts from the legislative history . . . misconceived the appropriate analytical task." *Id.*

at 761 n.4.

Applying the same reasoning as the Court in *Patterson* to the interpretation of "applicable

law" in the context of § 544(b)(1), this Court must find that the plain language of "applicable law"

is not limited to any particular law, and thus a trustee may use any law available to avoid a transfer.

The majority of courts interpreting "applicable law" in the context of § 544(b)(1) have come to

this conclusion. Accordingly, this Court finds that the plain language of § 544(b)(1) permits a

trustee to step into the shoes of any existing unsecured creditor, including the IRS, and utilize any

"applicable law" to avoid a transfer, including the FDCPA.

## CONCLUSION

The plain language of § 544(b) provides that a trustee may assert the rights of "a creditor

holding an unsecured claim." 11 U.S.C. § 544(b)(1). The statute does not exclude the IRS as such

a creditor.  *See id.*  Moreover, the FDCPA is "applicable law" under § 544(b)(1) because the IRS

may utilize the provisions of the FDCPA.

In this matter, the IRS is an unsecured creditor, and § 544(b)(1) permits Trustee to step into

the shoes of the IRS and utilize the FDCPA and its collection powers.  Accordingly, Defendants'

Motion to Dismiss [Docket No. 9] is denied.

Pursuant to Rule 7012(a) of the Federal Rules of Bankruptcy Procedure, Defendants shall

have fourteen (14) days after entry of this Order to file an answer to Trustee's Complaint.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**11/29/2018**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 11/30/2018